IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 10-cv-00508-LTB-BNB

BUCKLES MANAGEMENT, LLC,
BUCKLES MANAGEMENT 401(K) PROFIT SHARING PLAN,
JLC CONSULTING, INC.,
FOCUS BUSINESS PARK, LLC, and
JOE COOK,

        Plaintiffs,

v.

INVESTORDIGS, LLC,
ONIT SOLUTIONS, LLC,
WALTER CHARNOFF,

        Defendants.
_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

This matter is before me on a Motion for Summary Judgment [**Doc #10**] filed by the Defendants, InvestorDigs, LLC, Onit Solutions, LLC, and Walter Charnoff. Defendants seek judgment in their favor on various claims asserted in the complaint filed by Plaintiffs, Buckles Management, LLC, Buckles Management 401(k) Profit Sharing Plan, JLC Consulting, Inc., Focus Business Park, LLC, and Joe Cook. Oral arguments would not materially assist me in the determination of this motion. After consideration of the parties' briefs and exhibits, I GRANT IN PART and DENY IN PART the motion as follows.

I. BACKGROUND

This lawsuit arises out of a failed business relationship. In July 2008, Plaintiff Cook agreed to provide consultation services to Defendant InvestorDigs for a period of 120 days in

exchange for a 2% ownership interest therein. In addition, from July through October 2008, InvestorDigs received a total of $450,000 in funds from Plaintiffs. The characterization of these funds is disputed; Plaintiffs say that the funds constituted loans, while InvestorDigs says that the funds were for the purchase of ownership interests in InvestorDigs. Also during this period InvestorDigs began to lease commercial space from Plaintiff Focus Business Park. InvestorDigs moved into the property, but Plaintiffs assert that they have failed to pay all amounts owed under the lease.

After the business relationship fell apart, the parties met on January 21, 2009 to discuss how to end their relationship. Plaintiffs contend that the parties agreed on settlement terms at that meeting, while Defendants disagree that they reached a final agreement. Ultimately Plaintiffs filed this lawsuit in May of 2009. In their complaint Plaintiffs assert claims for: enforcement of an alleged settlement agreement, breach of loans and the lease agreement; unjust enrichment; and accounting. In response, Defendants assert counterclaims for: breach of contract; unjust enrichment; negligent misrepresentation; breach of fiduciary duty; and fraud/false misrepresentation.

Plaintiffs initially filed this lawsuit in state court, but subsequently had it removed to this court, pursuant to 28 U.S.C. § 1334, after Plaintiff Cook filed a petition under Chapter 11 of the Bankruptcy Code in November of 2009. In their notice of removal, Plaintiffs assert that this is a core proceeding, as set forth in 28 U.S.C. § 157(b)(2), in that the claims raised here compromise a significant asset of the bankruptcy estate. The parties do not dispute that Colorado law forms the basis for Plaintiffs' claims.

## II. SUMMARY JUDGMENT STANDARD

The purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate if the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, I examine the factual record in the light most favorable to the party opposing summary judgment, extending to that party all reasonable factual inferences. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the movant carries its burden of showing the absence of a genuine issue of material fact, the non-movant must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).

## III. ANALYSIS

A. First Claim for Relief: Settlement Agreement Enforcement

Plaintiffs seek judicial enforcement of the parties' alleged settlement agreement in the first claim of their complaint. They assert that "the parties agreed on all material provisions of the settlement agreement" and "Plaintiffs and Defendants entered into a binding, written settlement agreement as a result of the January 21, 2009 meeting."

In this motion for summary judgment, Defendants maintain that the Colorado Statute of Frauds – which provides that any agreement not to be performed within one year must be in

writing and subscribed by the party to be charged – renders any alleged settlement agreement void. *See* Colo. Rev. Stat. § 38-10-112. Because the terms of the alleged agreement included a note in favor of Plaintiffs payable over a five year period, and because "none of the Defendants executed any writing purporting to be a settlement agreement," Defendants maintain that any agreement is void pursuant to § 38-10-112.

As an initial matter, Defendants' answer to the complaint did not plead a statute of fraud defense. Fed. R. Civ. P. 8(c) requires a party to set forth affirmatively all matters which it intends to use as an avoidance or affirmative defense in responding to a pleading. The statute of frauds is a defense specifically enumerated as an affirmative defense covered by Fed. R. Civ. P. 8(c). Generally, "[i]f such defenses are not affirmatively pleaded, asserted with a motion under Rule 12(b), or tried by the express or implied consent of the parties, such defenses are deemed to have been waived and may not thereafter be considered as triable issues in the case." *Radio Corp. of America v. Radio Station KYFM, Inc*., 424 F.2d 14, 17 (10th Cir. 1970) (citations omitted); *see also Bentley v. Cleveland County Bd. of County Comm's*, 41 F.3d 600, 604 (10th Cir. 1994)("[f]ailure to plead an affirmative defense results in a waiver of that defense")(*citing* Fed R. Civ. P. 8(c) and 2A James W. Moore, et al., Moore's Fed. Prac. ¶ 8.27(3) (2d ed.1994)).

Strict adherence to the pleading requirement is inappropriate, however, when the purpose of the requirement has been fulfilled otherwise . *Ahmad v. Furlong*, 435 F.3d 1196, 1201 (10th Cir. 2006). "The purpose of . . . pleading [an affirmative defense] is to give the opposing party notice of the [defense] and a chance to argue, if he can, why the imposition of [the defense] would be inappropriate." *Id.* (noting that generally most courts "permit a defendant to raise an affirmative defense for the first time in a post-answer motion if the defense is raised in sufficient

time that there is no prejudice to the opposing party merely because of the delay"). The Tenth Circuit has held that the purposes behind the notice pleading requirements are served if the plaintiff is put "on notice well in advance of trial that defendant intends to present a defense in the nature of an avoidance." *Ball Corp. v. Xidex Corp.*, 967 F.2d 1440, 1443 (10th Cir. 1992) (*quoting Marino v. Otis Eng'g Corp.*, 839 F.2d 1404, 1408 (10th Cir. 1988)). Thus, in the absence of a showing of prejudice, an affirmative defense may be raised for the first time at summary judgment. Here, Plaintiffs have addressed fully the merits of the defense in their response. Thus, they are not unfairly prejudiced and Defendants mere failure to plead the defense in the answer in this case does not constitute a waiver. *See Ball Corp. v. Xidex*, *supra*, 967 F.2d at 1443-44.

In response to Defendants' statute of frauds argument, Plaintiffs argue that the parties exchanged a writing that contained the material terms of the agreements sufficient to satisfy the requirements of § 38-10-112. They also argue that Defendant Charnoff provided an electronic signatory to this writing. Specifically, Plaintiffs rely on an email string dated January 21, 2009, in which it appears that Defendant Charnoff sent a list of the purported agreed-upon settlement terms to Fred Heigold, another employee at InvestorDigs (also known as Investorloft.com) who, in turn, forwarded the email to four or five other people (including Plaintiff Cook) with the message: "Thanks to everyone for participating today." Plaintiffs maintain that the existence of the agreement was confirmed by another email – sent by InvestorDigs' counsel to counsel for Plaintiff Cook, dated January 29, 2009 – which indicated that "[c]ertain terms were agreed to at that meeting [of January 21] which I'm sure your client has communicated to you." That email further indicates that InvestorDigs' counsel was in the process of drafting documents to

memorialize those terms. Therefore, Plaintiffs do not dispute that the alleged settlement agreement is subject to § 38-10-112, as an agreement not to be performed within one year. Rather, they maintain that: 1) the January 21, 2009 email constitutes a writing, and 2) that the electronic signature is valid and enforceable and, so, the requirement that the "agreement or some note or memorandum thereof is in writing and subscribed by the party charged therewith" is met. My research reveals very little Colorado authority addressing whether an email exchange satisfies a statute of frauds writing requirement. In *Gleneagle Civic Association v. Hardin,* 205 P.3d 462, 467 (Colo. App. 2008), a division of the Colorado Court of Appeals noted that whether an e-mail constitutes a "writing" is an unsettled question of law. After reviewing several cases from other jurisdictions – including *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 296 (7th Cir. 2002) in which the Seventh Circuit determined that an e-mail satisfied the applicable statute of frauds – the division concluded that "the e-mails in this case are writings, because we are persuaded by the reasoning in the authorities . . . [and a]lthough the e-mails were originally in electronic form, they were a visual recording of words." *Id.*

In *PayoutOne v. Coral Mortgage Bankers,* 602 F.Supp.2d 1219, 1225 (D. Colo. 2009), Judge Brimmer addressed whether a group of emails constituted a "writing" sufficient to meet the Colorado statute of frauds regarding credit agreements. After reviewing the admittedly minimal case law, Judge Brimmer concluded that the emails might satisfy the writing requirement and, as such, the plaintiff's breach of contract claim survived Fed. R. Civ. P. 12(b)(6) dismissal. *Id.* at 1226. *See also Ellis Canning Co. v. Bernstein,* 348 F.Supp. 1212, 1228 (D.C. Colo. 1972)(holding that a tape recorded oral agreement is "reduced to tangible form" and thus is a writing as required by the applicable statute of frauds).

Following this authority, I agree that under Colorado law an email exchange may satisfy a statue of frauds writing requirement. But whether the email at issue in this case evidences a mutual assent to the terms of an agreement remains genuinely disputed. Plaintiffs' complaint and their response to the motion here asserts that the terms of that settlement agreement were set forth in the email. In his affidavit, Plaintiff Cook avers that a "global settlement agreement between all parties was reached on or about January 21, 2009." In contrast, in their reply to the motion for summary judgment, the Defendants provide an affidavit from Fred Heigold averring that he actually authored the email at issue and that it merely constituted a "draft resolution for the members [of InvestorDigs] consideration."

Whether the parties have entered into a contract is a question of fact. *See Southern Colorado MRI, Ltd. v. Med-Alliance, Inc.,* 166 F.3d 1094, 1098 (10th Cir. 1999)(*citing I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882, 887 (Colo.1986)); *see also Ellis Canning Co. v. Bernstein, supra*, 348 F.Supp. at 1221 (*citing Marti-Matter Co. v. Thomas*, 202 P. 703 (1921)(whether there has been a meeting of the minds is a question of fact to be determined from all of the evidence in the case). Assuming that email to be a writing under the statue of frauds, a genuine issue of fact remains whether the email was sufficient to evidence a contract.

As to the § 38-10-112 requirement that the writing be "subscribed by the party charged therewith," Plaintiffs argue that the email is electronically signed. Plaintiffs refer me to the "Electronic Signatures in Global and International Commerce Act," 15 U.S.C. § 7001, *et. seq.*, which provides that a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form, and a contract relating to such transaction may not be denied legal effect, validity, or enforceability

7

solely because an electronic signature or electronic record was used in its formation. 15 U.S.C.A. § 7001(a). An "electronic signature" is an electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record. 15 U.S.C.A. § 7006(5). *See generally Kaufman v. American Family Mut. Ins. Co.*, 2007 WL 437641 (D. Colo. 2007)(unpublished opinion)(finding that an automated signature on a written letter could meet the statute of fraud requirement precluding dismissal).

In this case, however, Fred Heigold's affidavit indicates that he is the actual author of the email setting forth the alleged terms of the settlement agreement, and that he forwarded this email "from Defendant Walter Charnoff's computer" to himself, and then on to the members of InvestorDigs (including Plaintiff Cook) for consideration and voting. He also avers that he is an administrative employee at InvestorLoft.com – who was d/b/a InvestorDigs at the relevant time – and that he does not have the authority to bind Investorloft.com.

This evidence, which is uncontroverted, results in the conclusion that while the email of settlement terms may constitute a writing under § 38-10-112, it is not "subscribed by the party charged therewith." In this case, the only evidence is that the electronic signature at issue was not "executed or adopted by a person with the intent to sign the record" pursuant to 15 U.S.C. § 7006(5). *See Pepco Energy Services, Inc. v. Geiringer,* 2010 WL 318284 (E.D. N.Y. 2010) (ruling that under 15 U.S.C. § 7006(5), the parties' intent is crucial, and where there was ample evidence that the sender did not intend for the attached letter to be "executed" by virtue of his including his name on the email itself, the typed name on the email was deemed to not be equivalent to a signature). Hence, as a matter of law, the purported electronic signature on the

8

email in this case is not valid or enforceable in that is does not constitute a writing "subscribed by the party charged therewith." Therefore, I conclude that Plaintiff's First Claim for Relief asserting that Defendants' have breached their settlement agreement is barred by § 38-10-112, and that Defendants are entitled to summary judgment on this claim.

B.  Second Claim for Relief:  Breach of Contract - Loans

The complaint also asserts that Plaintiffs loaned Defendant InvestorDigs a total of $450,000.00, during the period of July through October of 2008 which, despite demand, Defendants have not repaid.  In their motion for summary judgment, Defendants do not challenge this assertion but instead contend that Plaintiffs' claim here is only against Defendant InvestorDigs, and that Defendants Charnoff and Onit Solutions were not parties to the alleged loan agreement(s).  As such, Defendants argue that Plaintiffs' claim seeking relief for loan repayment should be dismissed, as a matter of law, against Defendants Charnoff and Onit Solutions.  In their response, Plaintiffs concede that they intend only to assert breach of the loan agreement(s) against Defendant InvestorDigs.  Therefore, I conclude that Plaintiffs' Second Claim for Relief for breach of contract related to the loan agreement(s) should be dismissed as to Defendant Charnoff and Defendant Onit Solutions.

C.  Third Claim for Relief:  Breach of Contract - Lease Agreement

In their complaint, Plaintiffs claim that Defendants are in breach of a lease agreement. Specifically, Plaintiffs assert that Defendants entered into a two year lease with Plaintiff Focus Business Park for office space located in Tempe, Arizona.  They allege that "Defendants accepted the terms of the lease and moved people into the office space on October 13, 2008," but that they have failed to pay any amounts due under the lease.

Defendants again argue that they are entitled to summary judgment on this claim in that the alleged lease agreement is barred by the applicable statute of frauds, which requires that a lease be in writing if it is longer than one year. Colo. Rev. Stat. § 38-10-108 (providing that "[e]very contract for the leasing for a longer period than one year is void unless the contract or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party by whom the lease . . . is to be made"). Because the term of the alleged lease is two years, and because no written lease agreement was signed by Defendants, they argue any such lease agreement is void under § 38-10-108.

In response, Plaintiffs assert that the terms of the lease were memorialized in an email drafted by an InvestorDigs employee. The email at issue is from "terrye@investorloft.com," and is in repose to Plaintiff Cook's request for "the terms of the lease . . . from Wally's & my first discussion." The response attached a list of terms entitled "InvestorLoft Lease Terms."

Again, as discussed above, I have determined that an email exchange may satisfy a statute of frauds, requiring a writing subscribed by the party charged therewith, under Colorado law. Although the email at issue here is subject to interpretation, whether it is sufficient to evidence a contract is a question of fact that precludes summary judgment. Likewise, in this case whether the email is subscribed by the party by whom the lease is to be made is also a disputed issue of fact and, as such, Defendant are not entitled to summary judgment on this claim, as matter of law, pursuant to § 38-10-108.

Moreover, Plaintiffs maintain that the lease agreement at issue is subject to the partial performance exception to the statute of frauds. *See Nelson v. Elway,* 908 P.2d 102, 108-109 (Colo. 1995)(ruling that the part performance doctrine operates to preclude the application a

statute of frauds when the partial performance is "(1) substantial; and (2) required by, and fairly referable to no other theory besides that allegedly contained within the oral agreement"). Here, Plaintiffs argue that it is undisputed that Defendant InvestorDigs took possession of the leased space by moving in after Plaintiffs provided general improvements such as providing internet access, office furniture, telephone connections and signage. While Plaintiffs do not provide any specific evidence of this alleged partial performance, Defendants do not dispute it.

As a result, I conclude that dismissal of Plaintiffs' breach of contract claim regarding the lease agreement, as a matter of on statute of frauds grounds pursuant to § 38-10-108, is not warranted. However, Plaintiffs do not challenge Defendants' assertion that the breach of lease claim relates only to Defendant InvestorDigs, and should be dismissed against Defendants Charnoff and Onit Solutions. I again conclude, therefore, that Plaintiffs' Third Claim for Relief for breach of contract related to the lease agreement should be dismissed as to Defendant Charnoff and Defendant Onit Solutions.

D.  Fourth Claim for Relief:  Unjust Enrichment

As to Plaintiffs' claim for unjust enrichment, Defendants do not challenge the merits of the claim, but rather they again maintain that it relates only to Defendant InvestorDigs and, thus, summary judgment should enter in favor of Defendants Charnoff and Onit Solutions. Their argument is that Defendants Charnoff and Onit Solutions "were not parties to the alleged loan agreement or alleged lease" or, in the case of Charnoff individually, to the consulting agreement.

Plaintiffs disagree, however, and assert that they are entitled to recovery for unjust enrichment from all Defendants. In their complaint, Plaintiffs seek relief for unpaid goods and services provided to Defendants "including, without limitation, the loan of $450,000, leased

11

office space and consulting services." Plaintiffs argue that Plaintiff Cook provided contracting services "to both InvestorDigs and Defendant Charnoff, individually." They also maintain that after Plaintiffs loaned Defendant InvestorDigs money, they improperly transferred a security interest in their only asset to Defendant Onit Solutions, and that Defendant Charnoff is a manager and member of both InvestorDigs and Onit Solutions. As evidence of this transfer, Plaintiffs submit a Security Agreement and Secured Promissory Note, both dated March 31, 2009, in which Onit Solutions is purportedly given a security interest in the assets of InvestorDigs in exchange for a $285,000 secured promissory note. Plaintiffs argue that "[b]y their efforts to fraudulently convey the assets of InvestorDigs to Onit [Solutions,] both Defendants Charnoff and Onit have directly benefitted from all value or benefit conveyed upon InvestorDigs by Plaintiffs."

In response, Defendants assert that the basis for Plaintiffs' unjust enrichment claim against Defendants Charnoff and Onit Solutions is grounded in Plaintiffs' assertion that Defendants fraudulently conveyed the assets of InvestorDigs to Charnoff and Onit Solutions. Plaintiffs' claims related to the alleged fraudulent conveyance are not alleged or raised in the complaint, and I have recently denied Plaintiffs' motion seeking to amend their complaint in order to add such claims. So, Defendants argue that Plaintiffs are precluded from asserting a claim for unjust enrichment against Defendants Charnoff and Onit Solutions as they are not parties to the agreements at issue.

However, Plaintiffs' assertion that Defendants Charnoff and Onit Solutions are liable – in that they are the actual recipients of the benefit from the unpaid goods and services – is sufficient to withstand summary judgment. Although Defendants Charnoff and Onit Solutions may not

12

have been parties to the alleged loan agreement, alleged lease or to the consulting agreement (in the case of Charnoff individually), the theory of unjust enrichment is an alternative basis for recovery not grounded on the alleged contracts; it is "a judicially-created remedy designed to undo the benefit to one party that comes at the unfair detriment of another." *Lewis v. Lewis,* 189 P.3d 1134, 1141 (Colo. 2008). "As such, it is an equitable remedy and does not depend on any contract, oral or written." *Id.* (*citing Cablevision of Breckenridge, Inc. v. Tannhauser Condo. Ass'n*, 649 P.2d 1093, 1097 (Colo. 1982)). Although the question is close, I conclude that summary judgment on this claim is unwarranted.

E. Fifth Claim for Relief: Accounting

Finally, Defendants do not seek a summary judgment ruling in their favor on Plaintiffs' claim in which they seek an accounting of Defendant InvestorDigs' assets, liabilities, cash flows, tax returns, etc.

ACCORDINGLY, based on the forgoing, I GRANT IN PART and DENY IN PART Defendants' Motion for Summary Judgment [**Doc #10**] as follows:

A. All Defendants are entitled to summary judgment on Plaintiffs' Claim for Breach of Contract of the Settlement Agreement and, as a result, Plaintiffs' First Claim for Relief is DISMISSED;

B. Defendant Charnoff and Defendant Onit Solutions are entitled to summary judgment in their favor on Plaintiffs' Second Claim for Relief for Breach of Contract of the Loans;

C. Defendant Charnoff and Defendant Onit Solutions are entitled to summary judgment in their favor on Plaintiffs' Third Claim for Relief for Breach of Contract of the Lease Agreement;

D.  Defendants are not entitled to summary judgment in their favor on Plaintiffs' Fourth Claim for Relief for Unjust Enrichment; and

E.  Defendants are not entitled to summary judgment in their favor on Plaintiffs' Fifth Claim for Relief for Accounting.

Dated: July 20, 2010, in Denver, Colorado.

BY THE COURT:

　 s/Lewis T. Babcock　　　
LEWIS T. BABCOCK, JUDGE